DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, DeWitt McDonald, appeals the dismissal of his petition for postconviction relief and the denial of his motion for a new trial in the Erie County Court
 {¶ 2} of Common Pleas. For the following reasons, we affirm the judgment of the trial court.
 {¶ 3} In June 1994, appellant was convicted by a jury of aggravated murder and other charges. The charges followed the death of a bystander and the wounding of another person in a drive-by shooting. He was sentenced to life in prison without possibility of parole for 20 years. His conviction and sentence were affirmed on appeal. State v. McDonald
(Feb. 7, 1997), 6th Dist No. E-95-046. Appellant filed this petition for postconviction relief on May 1, 2003. The state moved for summary judgment on the basis of res judicata and R.C. 2953.21. The trial court granted the motion for summary judgment and dismissed appellant's petition. In its conclusions of law, the trial court held that it dismissed appellant's petition as a matter of law pursuant to R.C. 2953.21(A)(2), which requires petitions for postconviction relief to be filed within 180 days of the trial court's entry of judgment. The trial court also found appellant's postconviction petition barred by res judicata.
 {¶ 4} Together with his petition, appellant motioned the court for a new trial pursuant to Crim.R. 33(A). Appellant also motioned the trial court to hold R.C. 2953.21 unconstitutional, on the ground of impermissible retroactive application and on the ground of an impermissibly high standard of proof. The trial court disagreed, citing appellate precedent, e.g., State v. Byrd (2001), 145 Ohio App.3d 318, in denying the motion.
 {¶ 5} Appellant sets forth the following assignments of error:
 {¶ 6} "1. Defendant was denied due process of law when the court dismissed his postconviction petition and motion for a new trial based on retroactive application of the statute.
 {¶ 7} "2. Defendant was denied due process of law when the court would not consider the merits of his postconviction petition as he presented evidence of actual innocence.
 {¶ 8} "3. Defendant was denied due process of law when his petition for postconviction relief and motion for a new trial were denied on procedural grounds as he established actual innocence."
 {¶ 9} Appellant's first assignment of error addresses the threshold issue of his petition: Whether the current postconviction relief statute, R.C. 2953.21, may be constitutionally and retroactively applied to appellant, or whether the version of the statute in effect at the time appellant was sentenced applies.[1]
 {¶ 10} R.C. 2953.21 was amended by Am.Sub.S.B. No. 4 ("S.B. 4"), effective September 21, 1995, which added the current 180-day time limitation during which petitions must be filed, now contained in R.C.2953.21(A)(2). The limitation functions as a statute of limitations, barring petitions filed more than 180 days after sentencing. Obviously, appellant filed his petition well outside of the 180-day limit. Appellant argues that application of the current statute to his petition is constitutionally impermissible, and that since he was sentenced before S.B. 4, the former version should apply to his petition.
 {¶ 11} The statute as it read when appellant was convicted and sentenced did not contain any time limitation. It stated in relevant part:
 {¶ 12} "(A) Any person convicted of a criminal offense or adjudged delinquent claiming that there was such a denial or infringement of his rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, may file a petition at any time in the court which imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. * * *" R.C. 2953.21(A) (as it existed in 1995) (emphasis added).
 {¶ 13} Section 10, Article I of the United States Constitution contains the Ex Post Facto Clause and protects against laws "both retrospective and more onerous than the law in effect on the date of the offense." Weaver v. Graham (1984), 450 U.S. 24, 30, limited by Collinsv. Youngblood (1990), 497 U.S. 37. Similarly, Section 28, Article I, Ohio Constitution, the Retroactivity Clause, prohibits the retroactive application of laws that "reach back and create new burdens, new duties, new obligations, or new liabilities not existing at the time [the statute becomes effective]." Bielat v. Bielat (2000), 87 Ohio St.3d 350, 353, citing Miller v. Hixson (1901), 64 Ohio St. 39, 51. The Supreme Court of Ohio has applied the clause such that it "prohibits the General Assembly from passing retroactive laws that, when applied, act to impair vested rights." State v. LaSalle (2002), 96 Ohio St.3d 178, 180-181.
 {¶ 14} However, a retroactive statute does not offend the Ohio Constitution's Retroactivity Clause if the legislature expressly intended the statute to apply retroactively. R.C. 1.48; Van Fossen v. Babcock Wilcox Co. (1988), 36 Ohio St.3d 100, paragraph one of the syllabus. Also, if a law is to have retroactive application, it must be remedial in nature only. Id. at 107. To determine whether a statute is substantive or remedial, the test is whether the statute "impairs or takes away vested rights, affects an accrued substantive right, imposes new or additional burdens, duties, obligation or liabilities as to a past transaction, or creates a new right. Conversely, remedial laws are those affecting only the remedy provided, and include laws that merely substitute a new or more appropriate remedy for the enforcement of an existing right." Statev. Cook (1998), 83 Ohio St.3d 404, 411, citing Van Fossen,36 Ohio St.3d at 107. Thus, a statute will only be held unconstitutional pursuant to the Retroactivity Clause if either (1) the legislature did not expressly intend it to apply retroactively or (2) if the statute is substantive.
 {¶ 15} First, the legislature expressly stated that R.C. 2953.21
applies to defendants sentenced before the statute's effective date. Uncodified Section 3 of S.B. 4 provides for application of the statute to defendants sentenced before the effective date, but grants them the right to file a petition either within 180 days of sentencing or "within one year from the effective date of this act." Thus, the legislature intended it to apply retroactively.
 {¶ 16} The statute is substantive because it affects a right that vests once a defendant has been convicted of a criminal offense. It is the point of sentencing at which a person becomes entitled to file a postconviction relief petition. R.C. 2953.21(A)(1); State v. Goist, 11th Dist. No. 2002-T-0136, 2003-Ohio-3549, at ¶ 17. But see State v. Risner
(May 13, 1999), 3rd Dist. No. 12-98-12 (reasoning that the right to file a postconviction relief petition vests once the petition is actually filed). Thus, because the statute expressly affects the vested right of defendants sentenced before its effective date, the statute is substantive.
 {¶ 17} However, even a statute which is retroactive and substantive will not offend the Retroactivity Clause if it provides a "reasonable time in which to enforce" the right. Gregory v. Flowers (1972),32 Ohio St.2d 48. In Gregory, a workers' compensation statute was held unconstitutional because a new statute of limitations was imposed retroactively to claimants who had already filed for compensation but to whom a remedy had not yet been provided; thus the statute eliminated a right which had clearly vested. Unlike the statute at issue in Gregory,
R.C. 2953.21(A)(2) provides defendants sentenced prior to September 1995 a reasonable time in which to enforce the right. Since retroactive application of the statute does not destroy a vested right, the statute is constitutional and is applicable to the instant petition. Accord, Statev. Goist, 11th Dist. No. 2002-T-0136, 2003-Ohio-3549; State v. Buoscio
(Dec. 27, 1999), 7th Dist. No. 98-CA-7. Appellant's first assignment of error is not well-taken, and we therefore apply the current version of R.C. 2953.21 to appellant's petition.
 {¶ 18} Appellant filed his petition more than one year past September 1995. Thus, the trial court does not have jurisdiction to entertain the merits of the petition unless appellant meets both conditions of R.C.2953.23(A), which if met, excuse an untimely filing. To overcome untimely filing, a petitioner must show both: (1) either that (a) he was unavoidably prevented from discovering facts necessary to present a claim for relief, or (b) after the filing deadline lapsed, the United States Supreme Court recognized a new federal or state right that applies to the petitioner; and (2) the petitioner must show by clear and convincing evidence that but for the constitutional error at trial no reasonable fact-finder would have found him guilty. R.C. 2953.23(A).
 {¶ 19} Appellant does not argue that a newly created federal or state right applies to him; therefore, he must show that he was unavoidably prevented from discovering facts necessary to bring this petition. The phrase "unavoidably prevented" means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence. Statev. Brown (Aug. 21, 1998), 6th Dist. No. L-98-1130, at 5. Thus, appellant must show that he was unavoidably prevented from discovering the evidence within his time limitation for filing — one year from September 21, 1995. Id. at 6.
 {¶ 20} The facts petitioner must allege must specify the newly discovered evidence and the reasons why he was unavoidably prevented from discovering it. At this juncture, we note that we only review the trial court's decision not to consider appellant's petition; the trial court did not consider the merits of the petition since it found the petition time-barred. Since "decisions denying [postconviction] petitions involve mixed questions of law and fact" we therefore "review the trial court's decision on factual issues using a manifest weight standard of review, and we review de novo the trial court's decision on legal issues." Statev. Hoffner, 6th Dist. No. L-01-1281, 2002-Ohio-5201, at ¶ 6. We will apply this same standard when evaluating whether the trial court correctly determined that appellant did not meet the exception to the time limitation of R.C. 2953.21(A).
 {¶ 21} In support of his contention that he was unavoidably prevented from discovering facts necessary to his claim, appellant claims that the prosecution at his trial willfully withheld evidence that would have established actual innocence; that his trial counsel was ineffective in failing to discover or present some evidence; and that sufficient operative facts submitted in his petition demonstrate actual innocence. In support, appellant attached three affidavits to his petition. We will consider each of these claims in turn.
 {¶ 22} As to the willful withholding of evidence claim, appellant argues that the investigating police operated in bad faith when, after impounding the car from which the shooting occurred, the car was released several days later without preserving any exculpatory evidence. Appellant cites Arizona v. Youngblood (1988), 488 U.S. 51, for the rule that police have a duty rooted in due process to preserve exculpatory evidence, and argues that police did not gather evidence from the car precisely to avoid collecting potentially exculpating evidence. This argument resembles one considered in City of Cleveland v. Brown (2002), 8th Dist. No. 80112, 2002-Ohio-2139. That court found Youngblood inapplicable where the appellant argued not that the police failed to preserve evidence already in their possession, but that the police failed to collect it in the first instance. As in Brown, appellant has "alleged no evidence of bad faith on the part of the police department in failing to preserve [the evidence] except that the failure to even [gather it] was calculated to avoid discovery of exculpatory evidence." Id. at ¶ 6. Instead, the court applied the rule that in order for a failure to preserve evidence to violate due process, "the evidence must possess an exculpatory value that was apparent before it was destroyed, and must also be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at ¶ 7, citing California v.Trombetta (1984), 467 U.S. 479, at paragraph (b) of syllabus. Therefore, appellant's unsupported allegations of bad faith must fail, since he has not pointed to any evidence having apparent exculpatory value before being "destroyed."
 {¶ 23} In support of his contention that his trial counsel was ineffective for failing to discover evidence, appellant urges us to review his counsel's performance under the standard set forth in Wigginsv. Smith, Warden, et al. (2003), 539 U.S. 510. In Wiggins, the United States Supreme Court held that the Maryland appellate courts applied an incorrect legal standard in evaluating a petition for postconviction relief based on ineffective assistance of counsel. Appointed trial counsel for the petitioner had failed to present any mitigating evidence of the petitioner's social and family background during a death penalty sentencing phase, although counsel had some reports containing evidence that the petitioner had been sexually abused as a child. State funds were available for the purpose of conducting social background investigation, but petitioner's counsel failed to conduct any investigation at all. In clarifying the Strickland standard in the context of postconviction relief proceedings based on ineffective assistance claims, the court emphasized that the point of analysis is whether trial counsel'sinvestigation supporting a decision to present a particular defense or trial strategy was itself reasonable. Wiggins, 539 U.S. 510 at paragraph (a) of the syllabus. The analysis includes a "contextdependent consideration of the challenged conduct as seen from counsel's perspective at the time of the conduct." Id., citing Strickland,466 U.S. at 688, 689.
 {¶ 24} Appellant argues that his trial counsel's investigation was unreasonably deficient by alleging that his trial counsel only spent four pre-trial hours in preparation and investigation. Appellant's allegation is directly contradicted, however, by his appointed counsel's time sheet submitted to the trial court for reimbursement. That sheet, part of the record before us, shows that appellant's trial counsel spent in excess of 75 hours in investigation and preparation for trial. Moreover, his counsel requested an extra allotment of funds from the trial court in order to retain an investigator to help him to prepare; the motion was granted, and an investigator was retained. Appellant also alleges that his attorney unreasonably failed to prepare for trial by failing to obtain the transcripts from his co-defendant's trials. Again, appellant's allegation is directly contradicted by the record: His counsel petitioned the trial court for copies of those transcripts, and his motion was granted.
 {¶ 25} Because the record demonstrates that appellant's trial counsel retained an investigator, obtained trial transcripts of appellant's co-defendants, and spent more than 75 hours in pre-trial preparation, we cannot say that the investigation fell below an objective standard of reasonableness under prevailing professional norms. Wiggins,539 U.S. at 521.
 {¶ 26} The only remaining factual basis to support his ineffective assistance claim is his trial counsel's failure to call any witnesses at trial. Appellant argues (1) that witnesses who had testified at his co-defendant's trials there presented potentially exculpating evidence and were available to testify, yet his counsel did not call them, and (2) that appellant had provided names of other witnesses to his trial counsel, and they were also not called to testify. In support, appellant attaches an affidavit from one of those latter persons, Quentin Miller.
 {¶ 27} Miller states in his affidavit that he had met appellant in jail "after [appellant] was arrested" and that he told appellant what he had seen at that time. Accepting the affidavit as true, appellant was aware of this evidence before his trial, and was therefore not unavoidably prevented from discovering it.
 {¶ 28} Appellant has also submitted the affidavit of Krista Harris, a trial witness for the prosecution, who avers that her testimony was improperly influenced by the prosecution and that her testimony at trial was false. Harris executed the affidavit attached to this petition in 2001. In response, the state references Harris' testimony in the trial transcript. At trial, Harris asserted that her prior testimony before the grand jury, which provided an alibi for appellant, was false. She recanted her prior testimony and then testified that appellant arrived at a hotel to meet with her shortly after the shooting occurred; that appellant appeared nervous and shaken; that the next morning appellant called one of the co-defendants and mentioned getting rid of a gun; that appellant then told her he had to go out of town; that appellant then called her from out of town, told her she was his alibi, and threatened to harm her if she talked to the police.
 {¶ 29} We cannot say that appellant was "unavoidably prevented" from discovering this evidence. The record shows a motion by his trial counsel to obtain the grand jury testimony transcripts, which was granted. Thus, his trial counsel was made aware, during trial if not before, that Harris recanted her grand jury testimony, and was thus impeachable. Trial counsel had the opportunity to cross-examine Harris and a jury evaluated her credibility. What weight the jury afforded her testimony is undeterminable. However, appellant was not unavoidably prevented from being aware that Harris' trial testimony was questionable. As for other explanations and allegations contained in the affidavit, this court has stated, with respect to a motion for a new trial, that a trial court, "when considering the recantation of the prosecution's primary witness, must make two findings: (1) which of the contradictory testimonies of the recanting witness is credible and true, and if the recantation is believable, then (2) would the recanted testimony have materially affected the outcome of the trial?" Toledo v. Easterling (1985),26 Ohio App.3d 59, at paragraph 3, syllabus. See, also, State v.Calhoun (1999), 86 Ohio St.3d 279, 284.
 {¶ 30} Because the foregoing arguments have failed, appellant's third argument in support must fail as well; he does not allege sufficient facts to support a claim that he was unavoidably prevented from discovering facts supporting his petition.
 {¶ 31} Regardless of appellant's inability to demonstrate the first element necessary to overcome his untimely filing, appellant also fails to demonstrate the second element. The only constitutional error appellant alleges is ineffective assistance. As discussed supra, his trial counsel made a reasonable investigation, and his decision not to call any witnesses on appellant's behalf at trial does not demonstrate deficient performance nor resulting prejudice. Trial counsel performed an adequate investigation; strategic choices made after an adequate investigation are "virtually unchallengeable." Wiggins, 539 U.S. at 521, citingStrickland, 539 U.S. at 690. Trial counsel may have concluded that, since appellant's co-defendants were convicted of similar crimes before appellant's trial, to call them for appellant's trial would have been fruitless or possibly harmful to the defense. Therefore, appellant's second assignment of error is not well-taken.
 {¶ 32} In his third assignment of error, appellant argues that the trial court erred in denying his motion for a new trial. Crim.R. 33 governs new trial requests, and contains time limitations for the filing of motions for a new trial. If a motion pursuant to Crim.R. 33 is not made within 14 days after the verdict was rendered, then it must be apparent "by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial * * *." Crim.R. 33 motions made due to newly discovered evidence must be filed within 120 days after the verdict was rendered. If later than 120 days, the defendant must show by clear and convincing proof that he was unavoidably prevented from the discovery of the evidence upon which he must rely. Since appellant is undisputedly untimely in filing this motion, he must demonstrate either (1) that he was unavoidably prevented from filing the motion, or (2) that he was unavoidably prevented from discovering new evidence.
 {¶ 33} We review this assignment of error for abuse of discretion. "The granting of a motion for a new trial on the ground of newly discovered evidence is within the sound discretion of the trial court and in the absence of a clear showing of abuse of that discretion, the ruling will not be disturbed on appeal. State v. Williams (1975),43 Ohio St.2d 88, paragraph two of the syllabus." State v. Wheeler (June 29, 1990), 6th Dist. No. WD-89-2.
 {¶ 34} In support of this assignment of error, appellant again argues that he was unavoidably prevented from discovering the same evidence he presented in connected with his first two assignments of error. We have already found the arguments regarding this evidence to be devoid of validity.
 {¶ 35} However, appellant argues differently with respect to Harris' perjured testimony. Appellant cites Dayton v. Martin (1987),43 Ohio App.3d 87, wherein the court stated that there is no "per se rule excluding newly discovered evidence as a basis for a new trial simply because that evidence is in the nature of impeaching or contradicting evidence. The test is whether the newly discovered evidence would create a strong probability of a different result at trial." Id. at syllabus. Additionally, the test from Toledo v. Easterling (1985),26 Ohio App. 3d 59, at paragraph 3, syllabus, permits the trial court to weigh Harris' affidavit for credibility, and we review its determination for abuse of discretion.
 {¶ 36} Harris' affidavit, if true, would impeach her trial testimony. However, her trial testimony was used to impeach her grand jury testimony, which is apparently the testimony upon which appellant relies. Since Harris' affidavit does not state what the content of her testimony would be, we will not speculate as to whether the testimony appellant wishes to offer would meet the test of Dayton v. Martin. That is, without knowing what her testimony would be, it is indeterminable whether her testimony would create a strong probability of a different result at trial. Since the trial court did not abuse its discretion in denying appellant's motion for a new trial, appellant's third assignment of error is not well-taken.
 {¶ 37} For the foregoing reasons, the judgment of the Erie County Court of Common Pleas is affirmed. Costs to appellant pursuant to App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Resnick, J. Concur.
[1] Appellant does not argue in his brief, as he did before the trial court, the unconstitutionality of the statute's burden of proof. Therefore, we do not address this argument. App.R. 12.