[Cite as *State v. Howard*, 2016-Ohio-504.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 15AP-161 |
| | | (C.P.C. No. 06CR-9525) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Timothy J. Howard, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on February 11, 2016

*Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

*Timothy Young*, Ohio Public Defender, and *Joanna L. Feigenbaum*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Timothy J. Howard, appeals from a decision and entry of the Franklin County Court of Common Pleas denying his motion for leave to file a motion for a new trial, denying his petition for postconviction relief and his amended petition for postconviction relief, and granting the motion of plaintiff-appellee, State of Ohio, to dismiss Howard's petition for postconviction relief and amended petition for postconviction relief. For the following reasons, we affirm in part and reverse in part.

## I. Facts and Procedural History

{¶ 2} By indictment filed December 21, 2006, the state charged Howard with one count of aggravated murder, in violation of R.C. 2903.01, and one count of tampering

with evidence, in violation of R.C. 2921.12.  The charges related to the death of Howard's wife, Delilah Howard.

{¶ 3}   As this court noted in our previous decision, the evidence at trial showed that on the morning of April 1, 2006, Howard called 911 and reported that Delilah hanged herself in their home.  *State v. Howard*, 10th Dist. No. 08AP-177, 2009-Ohio-2663, ¶ 2 ("*Howard I*").  A medic responding to the scene testified that Howard said he found Delilah "hanging from the nail," and that Howard identified the nail to the medic; that nail was small and covered with cobwebs and dust.  *Id.* at ¶ 3.  Investigators recovered four undated suicide notes from the scene written to Howard and the couple's three children.  *Id.* at ¶ 8.  A handwriting expert concluded Delilah " 'probably' wrote the notes." *Id.*  Dr. Bonita Ward, who performed the autopsy on Delilah, testified that Delilah did not die by hanging, but by ligature strangulation homicide.  *Id.* at ¶ 9.  Additionally, Dr. Ward testified that the furrow around Delilah's neck, the mark left by a ligature, "went straight back" and nearly encircled her entire neck.  *Id.* at ¶ 10.  In a typical hanging, the furrow casts upward as an "incomplete upside down V."  *Id.*

{¶ 4}   The Ohio Bureau of Criminal Investigation ("BCI") collected evidence from Howard's home, including a portion of the floor joist containing the nail the medic said Howard identified as the one from which Delilah was hanging.  *Id.* at ¶ 13.  BCI also collected two other portions of floor joist containing different nails.  *Id.*  A forensic engineer tested all three nails and concluded that none of the three had been subjected to Delilah's weight.  *Id.* at ¶ 15.

{¶ 5}   During his testimony, Howard said Delilah's bathrobe belt, which he said she used to hang herself, may have been wrapped around more than one nail.  *Id.* at ¶ 20, 22.  On cross-examination, the state asked Howard why he changed his story to say that he found Delilah hanging from more than one nail when he supposedly told investigators at the scene that he found her hanging from only one nail.  *Id.* at ¶ 22.  Howard denied ever telling the investigators he found Delilah hanging from only one nail.  *Id.*

{¶ 6}   Howard presented the testimony of forensic pathologist Dr. Suzanna Dana who opined Delilah had committed suicide by hanging.  *Id.* at ¶ 27.  Dr. Dana opined that the furrow in Delilah's neck angled upward in an "inverted V" to signify a hanging.  *Id.* Howard also presented the expert testimony of an engineer who tested nails still in the

Howards' basement; this expert concluded that some of those nails could support up to 150 pounds on their own, and that the combination of a common nail and finishing nail together could support 140 pounds; Delilah weighed 135 pounds.  *Id.* at 26, 9.  The expert also noted that one of the nails still in the Howards' basement that the state did not collect for testing was bent.  *Id.* at ¶ 26.

{¶ 7}  Through counsel, Howard argued other evidence indicated Delilah committed suicide, including evidence showing Delilah wrote the suicide notes close to the time of her death, evidence showing Delilah had a substance abuse problem, and evidence showing Delilah took medication to treat depression.  The trial court did not allow Howard to introduce evidence of Delilah's alleged previous suicide attempts.  *Id.* at ¶ 23, 27.

{¶ 8}  The jury returned guilty verdicts as to both charges, and the trial court sentenced Howard to life imprisonment with parole eligibility after serving 20 years on the aggravated murder conviction and three years imprisonment on the tampering with evidence conviction, ordering Howard to serve the sentences consecutively.  The trial court journalized Howard's conviction and sentence in a February 7, 2008 judgment entry.

{¶ 9}  Howard appealed his conviction and sentence, and this court affirmed. *Howard I.*  Howard also filed with this court, on September 8, 2009, an application for reopening pursuant to App.R. 26(B), and this court denied his application.  *State v. Howard*, 10th Dist. No. 08AP-177 (Feb. 16, 2010) (memorandum decision) ("*Howard II*").  The Supreme Court of Ohio granted Howard's pro se motion for delayed appeal, but, after briefing, declined to exercise its discretionary jurisdiction to hear the appeal.  *State v. Howard*, 123 Ohio St.3d 1405, 2009-Ohio-5031 ("*Howard III*"); *State v. Howard*, 124 Ohio St.3d 1443, 2010-Ohio-188 ("*Howard IV*").

{¶ 10} On February 16, 2012, more than four years after the trial court entered judgment against him, Howard filed a motion for leave to file a motion for new trial along with the accompanying motion for new trial ("motion for leave") and a petition for postconviction relief.  Both the motion for leave and the petition for postconviction relief relied on the following allegedly newly discovered evidence: (1) Delilah's mental health records from Netcare, a community treatment facility, showing Delilah received treatment

at Netcare, had previously attempted suicide at least two times, including a previous attempted suicide by hanging, and had suicidal ideations six months prior to her death; (2) the affidavit of Patti Allen, a friend of Howard and Delilah, who averred that Delilah had previously attempted suicide, that Delilah abused drugs, and that Delilah was in a poor state of mind immediately prior to her death; (3) the affidavit of Sam Minturn, a friend of Howard and Delilah, who averred that Howard was distraught over Delilah's death and questioned why Delilah would take her own life; and (4) the state's alleged failure to disclose to defense counsel the contact information for Debra Barnett, the former Franklin County Sheriff's Office detective who conducted the initial interview with Howard on the day of Delilah's death. The state combined its response to Howard's motion for leave and his postconviction petition in an April 10, 2012 memorandum contra and motion to dismiss.

{¶ 11} On June 5, 2012, prior to responding to the state's memorandum contra and motion to dismiss, Howard filed a motion for leave to amend his motion for leave to file a motion for new trial and a motion for leave to amend his postconviction petition (collectively "motions for leave to amend"). The basis for the motions for leave to amend was Howard's discovery that on May 30, 2012, the Franklin County Coroner's Office issued a "Supplementary Medical Certification" to Delilah's death certificate, changing the official cause and manner of Delilah's death. Dr. Jan Gorniak, the then current Franklin County Coroner, reviewed the original findings and determined Delilah did not die by ligature strangulation but instead the cause of death was "asphyxia due to compression of the neck." (Dr. Gorniak Report, 3.) Further, Dr. Gorniak changed the manner of death from homicide to "[c]ould not be determined." (Supplementary Medical Certification.) Dr. Gorniak also provided Howard's counsel with a report detailing her findings and explaining how she reached her conclusions. The state then filed a memorandum contra to Howard's amended motion for leave to file a motion for new trial and his amended petition for postconviction relief.

{¶ 12} On February 5, 2015, the trial court issued a decision and entry denying Howard's amended motion for leave to file a motion for new trial and amended postconviction petition. The trial court granted the state's motion to dismiss both Howard's postconviction petition and amended postconviction petition, and the trial

court did not hold a hearing on Howard's postconviction petition.    Howard timely appeals.

## II.  Assignments of Error

{¶ 13}  Howard assigns the following errors for our review:

> [1.] The trial court abused its discretion when it failed to grant Mr. Howard's amended motion for leave to file a motion for new trial when the record demonstrated by clear and convincing proof that Mr. Howard was unavoidably prevented from discovering the new evidence.
>
> [2.] The trial court abused its discretion when it dismissed Mr. Howard's amended post-conviction petition when the record showed that (1) Mr. Howard was unavoidably prevented from discovery of the facts upon which he relies, and (2) but for constitutional error in his trial, no reasonable factfinder would have found Mr. Howard guilty.
>
> [3.] The trial court abused its discretion when it failed to hold a hearing on Mr. Howard's amended motion for leave to file a motion for new trial when the record supported Mr. Howard's claim that he was unavoidably prevented from discovering the new evidence at issue and his delay in filing the material was reasonable under the circumstances.

 For ease of discussion, we address Howard's assignments of error out of order.

## III.  Second Assignment of Error – Petition for Postconviction Relief

{¶ 14}  In his second assignment of error, Howard argues the trial court abused its discretion in denying his amended petition for postconviction relief.   Howard sought postconviction relief based on (1) the alleged ineffective assistance of his trial counsel; (2) alleged prosecutorial misconduct; and (3) the presentation of false expert testimony at his trial.

{¶ 15}  " '[A] trial court's decision granting or denying a postconviction petition filed pursuant to R.C. 2953.21 should be upheld absent an abuse of discretion; a reviewing court should not overrule the trial court's finding on a petition for postconviction relief that is supported by competent and credible evidence.' " *State v. Sidibeh*, 10th Dist. No. 12AP-498, 2013-Ohio-2309, ¶ 7, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 58.  Further, we review a trial court's decision to deny a postconviction petition without a hearing under an abuse of discretion standard.  *State v. Boddie*, 10th Dist. No.

12AP-811, 2013-Ohio-3925, ¶ 11, citing *State v. Campbell*, 10th Dist. No. 03AP-147, 2003-Ohio-6305, ¶ 14.  An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable.  *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 16} As a general matter, a petition for postconviction relief is a collateral civil attack on a criminal judgment, not an appeal of the judgment.  *Sidibeh* at ¶ 8, citing *State v. Steffen*, 70 Ohio St.3d 399, 410 (1994).  A petition for postconviction relief " 'is a means to reach constitutional issues which would otherwise be impossible to reach because the evidence supporting those issues is not contained in the record.' "  *Id.*, quoting *State v. Murphy*, 10th Dist. No. 00AP-233 (Dec. 26, 2000).  Thus, a postconviction petition does not provide a petitioner a second opportunity to litigate his or her conviction.  *Id.*, citing *State v. Hessler*, 10th Dist. No. 01AP-1011, 2002-Ohio-3321, ¶ 23.  Instead, R.C. 2953.21 affords a petitioner postconviction relief " 'only if the court can find that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Ohio Constitution or the United States Constitution.' "  *Id.*, quoting *State v. Perry*, 10 Ohio St.2d 175 (1967), paragraph four of the syllabus.

{¶ 17} A petition for postconviction relief must meet strict timeliness requirements.  Pursuant to former R.C. 2953.21(A)(2), in effect at the time Howard filed his petition, a postconviction petition must be filed "no later than one hundred eighty days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication."  Here, Howard filed the transcripts for his direct appeal on September 19, 2008.  Thus, Howard's 180-day deadline to file a petition for postconviction relief expired in March 2009.  Howard filed the initial petition on February 16, 2012, nearly three years after the 180-day time frame expired.  He then filed his amended petition for postconviction relief on June 5, 2012.  Thus, Howard's amended petition for postconviction relief is untimely.

{¶ 18} A trial court may not entertain an untimely postconviction petition unless the petitioner initially demonstrates either (1) he was unavoidably prevented from discovering the facts necessary for the claim for relief, or (2) the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation.  R.C. 2953.23(A)(1)(a).  If the petitioner can satisfy one of those two

conditions, he must also demonstrate that but for the constitutional error at trial, no reasonable finder of fact would have found him guilty.  R.C. 2953.23(A)(1)(b).

{¶ 19} The doctrine of res judicata places another significant restriction on the availability of postconviction relief.  *Sidibeh* at ¶ 12.  " 'Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.' "  (Emphasis deleted.)  *State v. Cole*, 2 Ohio St.3d 112, 113 (1982), quoting *Perry* at paragraph nine of the syllabus.  "Res judicata also implicitly bars a petitioner from 're-packaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal."  *Hessler* at ¶ 27.

{¶ 20} Further, a petitioner is not automatically entitled to an evidentiary hearing on a postconviction petition.  *Sidibeh* at ¶ 13, citing *State v. Jackson*, 64 Ohio St.2d 107, 110-13 (1980).  To warrant an evidentiary hearing, the petitioner bears the initial burden of providing evidence demonstrating a cognizable claim of constitutional error.  *Id.*, citing R.C. 2953.21(C); *Hessler* at ¶ 24.  The trial court may deny the petitioner's postconviction petition without an evidentiary hearing "if the petition, supporting affidavits, documentary evidence, and trial record do not demonstrate sufficient operative facts to establish substantive grounds for relief."  *Sidibeh* at ¶ 13, citing *State v. Calhoun*, 86 Ohio St.3d 279 (1999), paragraph two of the syllabus.

{¶ 21} Because Howard's amended petition for postconviction relief is untimely, he must establish that he falls within one of the exceptions specified in R.C. 2953.21(A) that would permit him a longer time period to file his petition.  Howard relies on the provision that extends the time for filing a petition due to evidence the defendant was unavoidably prevented from discovering.  R.C. 2953.23(A)(1)(a).  "The phrase 'unavoidably prevented' in R.C. 2953.23(A)(1)(a) means that a defendant was unaware of those facts and was unable to learn of them through reasonable diligence."  *State v. Turner*, 10th Dist. No. 06AP-876, 2007-Ohio-1468, ¶ 11, citing *State v. McDonald*, 6th Dist. No. E-04-009, 2005-Ohio-798, ¶ 19.  Howard asserts he was unavoidably prevented from discovering the supplemental medical certification changing Delilah's cause and manner of death, the

Gorniak report, the Netcare records, and the address of Detective Barnett. These facts, Howard argues, support his claims of ineffective assistance of counsel, prosecutorial misconduct, and presentation of false expert testimony.

## A. Ineffective Assistance of Counsel

{¶ 22} Howard contends that he set forth sufficient operative facts to support his ineffective assistance of counsel claims, thereby warranting an evidentiary hearing. We agree.

{¶ 23} In order to secure a hearing on his claim for postconviction relief based on ineffective assistance of counsel, Howard had the burden of submitting evidentiary documents containing sufficient operative facts which, if believed, would establish (1) Howard's trial counsel substantially violated at least one of counsel's essential duties to his or her client, and (2) Howard suffered prejudice as a result. *Sidibeh* at ¶ 15, citing *Cole* at 114. "Judicial scrutiny of counsel's performance must be highly deferential * * * [and] a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland v. Washington*, 466 U.S. 668, 689 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 143-44 (1989). In his amended postconviction petition, Howard contended that his trial counsel was ineffective by failing to obtain the Netcare records detailing Delilah's previous suicide attempts and history of substance abuse.

## 1. Netcare Records

{¶ 24} In support of his amended postconviction petition, Howard provided the Netcare records extensively detailing Delilah's serious mental health condition and documenting Delilah's two prior suicide attempts. Additionally, Howard provided the affidavits of his trial counsel, Mary Younger and Mitchell Williams; the affidavit of Michael Fusca, the criminal investigator for the Franklin County Public Defender's Office assigned to his case; and the affidavit of Karen Roberts, the social worker at the Franklin County Public Defender's Office assigned to his case. Both Younger and Williams admit in their affidavits that they did not obtain or review Delilah's Netcare records prior to or during Howard's trial. Fusca admits that, during the course of his investigation, he did not visit Netcare or obtain Delilah's medical records from Netcare. Roberts also admits that she did not personally visit Netcare or obtain Delilah's records from Netcare;

however, Roberts further avers that her notes from Howard's case contain references to Netcare which "indicates [her] belief that Netcare should have been visited and Delilah Howard's records obtained." (Roberts Affidavit, ¶ 6.) Further, Roberts averred it was her normal course of business to make recommendations to attorneys on evidence they should obtain or witnesses that they should speak to, but the decision whether or not to pursue certain evidence is ultimately left to counsel. Roberts was not aware whether Howard's attorneys ever obtained the records from Netcare.

{¶ 25} Counsel for a criminal accused has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland* at 691; *see also State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751 (noting *Strickland* requires defense counsel to make a reasonable investigation). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland* at 691.

{¶ 26} There is no dispute that the Netcare records existed at the time of Howard's trial. However, Howard asserts that although he knew Delilah had, at one time, attempted to go to Netcare, he and his daughters were under the impression that she did not actually receive treatment at Netcare and thus had no reason to believe there would be records of her time there. Indeed, Howard's daughter testified at trial that Delilah "was trying to get into Netcare" but "they wouldn't accept her." (Tr. Vol. IV, 140.) On the one hand, counsel must rely on the representations of his or her client in formulating and conducting the appropriate investigation. *See Strickland* at 691 (stating "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions"). On the other hand, however, counsel pursuing a suicide theory as a defense should attempt to locate any medical or psychiatric documents tending to support that theory as part of a reasonable investigation. Howard put his trial counsel on notice that Delilah had at least *attempted* to obtain treatment at Netcare. At minimum, that should have prompted a phone call or visit to Netcare in order to ascertain whether any records of Delilah's treatment existed. And even if Howard's belief that Delilah did not actually receive treatment at Netcare somehow excused counsel's failure to fully investigate Delilah's mental health prior to her death, the affidavit of Roberts, the

social worker, does not. Roberts averred that her notes from Howard's trial indicated her belief that someone should contact or visit Netcare, yet Howard's trial counsel admittedly failed to do so. We find Howard has provided evidentiary documents containing sufficient operative facts which, if believed, would establish Howard's trial counsel substantially violated their duty to make a reasonable investigation into Howard's case. *Sidibeh* at ¶ 15.

{¶ 27} Having concluded Howard provided sufficient evidentiary documents setting forth sufficient operative facts that, if believed, establish Howard is able to satisfy the first prong of the *Strickland* analysis, we must still ascertain whether Howard suffered prejudice as a result. To show prejudice from counsel's deficient performance, Howard must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Strickland* at 694.

{¶ 28} It is unclear from the record before us why the trial court in Howard's original trial excluded references to Delilah's previous suicide attempts. There seems to be some suggestion that any references to prior suicide attempts would have been mere speculation. Given the details included in the Netcare records, there is now documentary evidence that Delilah attempted suicide at least two times prior to her April 1, 2006 death. One of those prior attempts was by hanging. As recently as six months prior to her death, Delilah sought mental health treatment for suicidal ideations. Though the state argues that the jury had sufficient information before it to infer that Delilah committed suicide but it chose not to, Howard was unable to present evidence that Delilah had previously attempted suicide. If the jury had heard that Delilah had attempted suicide two times before her death, and one of those attempts was by hanging, a reasonable finder of fact likely would have given much greater credibility to Howard's suicide defense at trial. We find that, had the jury been allowed to hear this information, there is a reasonable probability that the result of the trial would have been different. Thus, Howard provided the trial court with sufficient operative facts to warrant an evidentiary hearing on his amended postconviction petition with regard to his claim of ineffective assistance of counsel.

## 2. Detective Barnett's Address

{¶ 29} Additionally, Howard sets forth in his amended postconviction petition a claim that the state withheld Detective Barnett's address, thereby preventing him from calling Detective Barnett to testify in order to authenticate the report she authored indicating Howard told her he found Delilah hanging from "one or more nails." (Barnett Report.) "The 'suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.' " *State v. Bethel*, 10th Dist. No. 09AP-924, 2010-Ohio-3837, ¶ 17, quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is "material" within the meaning of Brady "only if there exists a 'reasonable probability' that the result of the trial would have been different had the evidence been disclosed to the defense." *Id.* at ¶ 18, quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995).

{¶ 30} Fusca, the criminal investigator, averred in his affidavit that he did not contact the Franklin County Sheriff's Office to request Detective Barnett's information because he heard the prosecutors state in the courtroom that they did not know Detective Barnett's location. Fusca averred he heard a Franklin County Sherrif's Office deputy state that he thought Detective Barnett might be in Las Vegas; Fusca attempted to locate Detective Barnett using biographical information but was unsuccessful. The affidavits of Howard's trial counsel indicate neither Williams nor Younger was ever "in possession" of Detective Barnett's contact information, and both Williams and Younger averred the state never gave them Detective Barnett's location or contact information. (Williams Affidavit, ¶ 11; Younger Affidavit, ¶ 11.) At trial, Younger told the trial court defense counsel had been unable to locate Detective Barnett but then stated "I will figure out a way to locate her." (Tr. Vol. II, 271.) Howard now relies on evidence showing the Franklin County Sheriff's Office had a forwarding address for Detective Barnett and had corresponded with her prior to Howard's trial.

{¶ 31} From the information before us, it is not clear whether either the prosecution or defense counsel ever *asked* the Franklin County Sheriff's Office for Detective Barnett's address prior to trial, and it is equally unclear whether the state actually "suppressed" this evidence within the meaning of *Brady*. What is clear, however,

is that Howard's new counsel with the Wrongful Conviction Project obtained Detective Barnett's address through a simple public records request for Detective Barnett's personnel file at the Franklin County Sheriff's Office. Though neither Williams nor Younger explain in their affidavits why they did not simply ask the sheriff's office for this information, their inaction is representative of their failure to adequately investigate the case. Once defense counsel became aware of Detective Barnett's report containing the statement that Howard initially told investigators he found Delilah hanging from "one or more nails," defense counsel should have been aware of the importance of locating Detective Barnett in order to secure admission of that report. Indeed, Younger represented to the trial court on the record that she would "figure out a way to locate" Detective Barnett, yet she admittedly failed to do so.

{¶ 32} At trial, the state relied heavily on expert testimony suggesting a single nail could not have supported Delilah's weight. Had the jury been able to hear that Howard told a detective, on the day that Delilah died, that he found Delilah hanging from "one or more nails," the jury would have reevaluated the weight it placed on both the state's and Howard's experts regarding the strength of the nails. Without Detective Barnett's report, Howard's trial testimony that Delilah may have been hanging from more than one nail served as a means to impeach his credibility; with Detective Barnett's report, Howard's testimony would have corroborated his version of events and undermined the state's expert witness. Thus, we conclude Howard's amended postconviction petition demonstrates sufficient operative facts that, if believed, indicate his trial counsel was ineffective.

### 3. Unavoidable Prevention

{¶ 33} Because Howard's amended postconviction petition is untimely, we are mindful that he faces the additional jurisdictional hurdle of demonstrating he was unavoidably prevented from discovering the facts necessary to support his claim of ineffective assistance of counsel. The state suggests that Howard's attempt to blame the failure to obtain the records on his trial counsel's ineffectiveness is a concession that the records could have been obtained with the exercise of reasonable diligence. The state argues that "criminal defendants and their counsel have a duty to make a 'serious effort' of their own to discover potential favorable evidence," and the state argues Howard does not

adequately explain how he, on his own, was unavoidably prevented from discovering the Netcare records even in light of his counsel's ineffectiveness. *State v. Anderson*, 10th Dist. No. 12AP-133, 2012-Ohio-4733, ¶ 14, quoting *State v. Golden*, 10th Dist. No. 09AP-1004, 2010-Ohio-4438, ¶ 15.

{¶ 34} As the trial court notes, it was not difficult for Howard to obtain the Netcare records; all that was needed was a phone call and a signed records release. We have concerns, however, with placing the onus of responsibility to thoroughly investigate a case on the defendant when the defendant is represented by and relying on counsel. In both *Anderson* and *Golden,* this court noted it would not find unavoidable prevention where the defendants could not explain why neither they nor their trial counsel could not have discovered the evidence with the exercise of reasonable diligence. *Anderson* at ¶ 14; *Golden* at ¶ 13. Here, however, Howard has adequately explained both failures. Howard did not discover the Netcare records on his own because he alleges neither he nor his daughters knew that Delilah actually obtained treatment at Netcare. He informed his trial counsel and the social worker that he thought she had tried to obtain treatment there, and he relied on his counsel to thoroughly investigate the case. As we outlined above, Howard's trial counsel was ineffective in failing to adequately investigate the matter, and we will not penalize Howard for relying on his trial counsel to conduct an investigation when he gave them all the information he had. This is not a case where the defendant knew of material information that he kept to himself prior to trial. *See, e.g., Anderson* at ¶ 14 (no unavoidable prevention where the defendant simply "remembered" a relevant real estate transaction after trial). Instead, having relied on his trial counsel to fully investigate the matter, Howard had no reason to know that a post-trial phone call to Netcare was a worthwhile phone call to make. It was not until Howard obtained new counsel that the Netcare records came to light, and then only because Howard's new counsel adequately investigated the matter where Howard's trial counsel did not.

{¶ 35} Similarly, our analysis of whether Howard was unavoidably prevented from discovering Detective Barnett's contact information and her corresponding report mirrors that of the Netcare records. Howard relied on his trial counsel to fully investigate his case, and his trial counsel failed to do so. Under these unique facts, we conclude Howard was

unavoidably prevented from discovering the facts necessary for his claim of ineffective assistance of counsel within the 180-day deadline for postconviction relief.

{¶ 36} Additionally, we note Howard also argues his trial counsel was ineffective in failing to locate, interview, and call to testify Allen and Minturn.  We agree with the state, however, that Howard does not demonstrate he was unavoidably prevented from discovering the facts necessary to support his claim for relief with respect to these affidavits.  Howard does not allege that he told his counsel to speak to these witness regarding the case, and Howard does not otherwise explain how his counsel was ineffective in failing to locate Allen and Minturn.  Thus, we conclude the Allen and Minturn affidavits do not meet the strict jurisdictional threshold of an untimely petition for postconviction relief.

{¶ 37} Nonetheless, as we explained in our analysis of Howard's ineffective assistance of counsel argument, we conclude Howard has alleged sufficient evidentiary basis for relief that, if believed, no reasonable finder of fact would have found him guilty. The support for Howard's conviction falls into three categories: (1) the medical evidence; (2) the expert witness testimony regarding the weight-bearing ability of the nails in the basement; and (3) the absence of information suggesting Delilah was suicidal or wanted to harm herself.  Trial counsel's failure to adequately investigate the case and obtain the Netcare records and Detective Barnett's contact information cast great doubt on two of these three categories.  To the extent the state wishes to refute the evidentiary basis of Howard's ineffective assistance of counsel claim, the appropriate place for the state to do so is in the trial court during a hearing on Howard's petition for postconviction relief pursuant to R.C. 2953.21(E).  At that time, the state is free to argue Howard did not receive ineffective assistance of counsel sufficient to warrant the setting aside of his conviction or the granting of a new trial.

**B. The Supplemental Medical Certification and Gorniak Report**

{¶ 38} Howard also argues under this assignment of error that the trial court erred in denying his amended postconviction petition with respect to the supplemental medical certification and the Gorniak report.  We need not consider whether Howard establishes he was unavoidably prevented from discovering the facts necessary for this claim of relief

because we conclude Howard's claim with respect to the supplemental medical certification and Gorniak report does not support a petition for postconviction relief.

{¶ 39} Howard attempts to fit the supplemental medical certification and the Gorniak report within the realm of postconviction relief by asserting his conviction was based on false evidence. Given that the supplemental medical certification changes the official cause and manner of Delilah's death, Howard argues that the state relied on false testimony in order to obtain a conviction when the state presented Dr. Ward's testimony at trial and introduced the original death certificate.

{¶ 40} " 'The knowing use of false or perjured testimony constitutes a denial of due process if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.' " *Columbus v. Joyce*, 10th Dist. No. 00AP-1486 (Nov. 29, 2001), quoting *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir.1989). " 'The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears.' " *Id.*, quoting *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To establish a denial of due process from the use of false testimony or false evidence, Howard must show: (1) the statement was false; (2) the statement was material; and (3) the prosecutor knew it was false. *State v. Young*, 10th Dist. No. 05AP-641, 2006-Ohio-1165, ¶ 29, citing *Joyce*.

{¶ 41} Even if we were to agree that the supplemental medical certification and the Gorniak report somehow render the original death certificate and Dr. Ward's testimony false, Howard is unable to demonstrate any knowledge on the part of the prosecution at the time of trial that the evidence was false. False evidence, "without proof of knowledge on the part of the prosecution, does not implicate constitutional rights and thus does not support a petition for postconviction relief." *Boddie* at ¶ 13, citing *State v. Jones*, 10th Dist. No. 06AP-62, 2006-Ohio-5953, ¶ 25.

{¶ 42} Additionally, we do not agree with Howard's characterization of the new evidence of the supplemental medical certification and the Gorniak report as amounting to recanted testimony. Howard attempts to link Dr. Ward and Dr. Gorniak as a single entity: the Franklin County Coroner's Office. However, the Franklin County Coroner's Office did not testify at Howard's trial; Dr. Ward did. Because Dr. Ward and Dr. Gorniak

are two distinct individuals, we do not agree with Howard that Dr. Gorniak's opinion represents a recantation of Dr. Ward's opinion.

{¶ 43} To the extent Howard argues the supplemental medical certification and the Gorniak report support his actual innocence rather than a due process violation based on the use of false evidence, we are mindful that postconviction relief is limited to constitutional errors. "Subsequently discovered evidence, standing alone, is not sufficient to prove substantive grounds for postconviction relief because it does not meet the high standard of demonstrating a constitutional violation in the proceeding that actually resulted in the conviction." *State v. Tolliver*, 10th Dist. No. 14AP-170, 2014-Ohio-4824, ¶ 29, citing *State v. Whiteside*, 10th Dist. No. 00AP-223 (Sept. 29, 2000), citing *State v. Powell*, 90 Ohio App.3d 260, 264 (1st Dist.1993) (noting the error complained of must be "of constitutional dimension" and must have occurred at the time of trial and conviction).

{¶ 44} Thus, because Howard's post-trial discovery of the supplemental medical certification and the Gorniak report do not support any constitutional errors occurring at the time of Howard's trial, we conclude the trial court did not abuse its discretion in denying Howard's postconviction petition in this regard. However, having concluded above that the trial court abused its discretion when it denied Howard's amended postconviction petition without a hearing with respect to his claim of ineffective assistance of counsel, we reverse in part the decision and entry of the Franklin County Court of Common Pleas and remand the matter to the trial court with instructions to conduct a hearing on Howard's postconviction relief claim of ineffective assistance of counsel. We overrule in part and sustain in part Howard's second assignment of error.

## IV. First Assignment of Error – Motion for Leave to File a Motion for New Trial

{¶ 45} In his first assignment of error, Howard argues the trial court abused its discretion when it denied his amended motion for leave to file a motion for new trial.

{¶ 46} An appellate court reviews a trial court's decision granting or denying a Crim.R. 33 motion for new trial for an abuse of discretion. *State v. Townsend*, 10th Dist. No. 08AP-371, 2008-Ohio-6518, ¶ 8, citing *State v. Schiebel*, 55 Ohio St.3d 71, 76 (1990). Similarly, we will not disturb a trial court's decision granting or denying a Crim.R. 33(B)

motion for leave to file a delayed motion for new trial absent an abuse of discretion. *Id.*, citing *State v. Pinkerman*, 88 Ohio App.3d 158, 160 (4th Dist.1993).

{¶ 47} Howard premised his motion for new trial on newly discovered evidence and, in part, on alleged misconduct of the state. Crim.R. 33 provides, in pertinent part:

> (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
>
> * * *
>
> (2) Misconduct of the jury, prosecuting attorney, or the witnesses for the state;
>
> * * *
>
> (6) When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial.
>
> * * *
>
> (B) Motion for new trial; Form, Time.
>
> * * *
>
> Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was unavoidably prevented from discovering the evidence within the one hundred twenty day period.

{¶ 48} Thus, Crim.R. 33(B) contemplates a two-step procedure when a defendant seeks to file a motion for new trial outside the 120-day deadline. "In the first step, the defendant must demonstrate that he was unavoidably prevented from discovering the evidence relied upon to support the motion for new trial." *State v. Bethel*, 10th Dist. No. 09AP-924, 2010-Ohio-3837, ¶ 13. In the second step, if the defendant does establish unavoidable prevention by clear and convincing evidence, the defendant must file the motion for new trial within seven days from the trial court's order finding unavoidable prevention. *Id.*, citing *State v. Woodward*, 10th Dist. No. 08AP-1015, 2009-Ohio-4213.

{¶ 49} A defendant demonstrates he was unavoidably prevented from discovering the new evidence within the 120-day time period for filing a motion for new trial when the defendant "had no knowledge of the evidence supporting the motion for new trial and could not have learned of the existence of the evidence within the time prescribed for filing such a motion through the exercise of reasonable diligence." *Id.*, citing *State v. Berry*, 10th Dist. No. 06AP-803, 2007-Ohio-2244, ¶ 19. "Clear and convincing proof that the defendant was 'unavoidably prevented' from filing 'requires more than a mere allegation that a defendant has been unavoidably prevented from discovering the evidence he seeks to introduce as support for a new trial.' " *State v. Lee*, 10th Dist. No. 05AP-229, 2005-Ohio-6374, ¶ 9, quoting *State v. Mathis*, 134 Ohio App.3d 77, 79 (1st Dist.1999). "The standard of 'clear and convincing evidence' is defined as that measure or degree of proof that is more than a mere preponderance of the evidence, but not to the extent of such certainty as is required beyond a reasonable doubt in criminal cases, and that will produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Townsend* at ¶ 7, citing *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 50} In addition to requiring the defendant to show he was unavoidably prevented from discovering the evidence relied upon to support the motion for new trial, a trial court may also require a defendant to show he filed his motion for new trial within a reasonable time after discovering the evidence relied upon to support the motion for new trial. *Woodward* at ¶ 15, citing *Berry* at ¶ 37. "If there has been a significant delay, the trial court must determine whether the delay was reasonable under the circumstances or whether the defendant has adequately explained the reason for the delay." *Id.*, citing *Berry* at ¶ 38.

{¶ 51} In order to warrant the granting of a motion for new trial in a criminal case based on newly discovered evidence, the defendant must show that the new evidence "(1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence." *State v. Petro*, 148 Ohio St. 505 (1947), syllabus. *See also Lee* at ¶ 9 .

{¶ 52} In his amended motion for leave to file a motion for new trial, Howard set forth five instances of newly discovered evidence upon which he based his motion. More specifically, Howard argued he was unavoidably prevented from discovering the evidence of (1) the Allen affidavit; (2) the Minturn affidavit; (3) Delilah's Netcare records showing Delilah received treatment at Netcare, had previously attempted suicide at least two times, and had suicidal ideations six months prior to her death; (4) the state's alleged failure to disclose to defense counsel the contact information for Detective Barnett; and (5) the supplementary medical certification and the accompanying report from Dr. Gorniak. We address each of these grounds for new trial to determine whether Howard demonstrated he was unavoidably prevented from discovering them.

## A. The Allen and Minturn Affidavits

{¶ 53} The trial court concluded Howard did not demonstrate he was unavoidably prevented from discovering the affidavits of Allen and Minturn. We agree. Allen and Minturn are Howard's friends and acquaintances known to him before his trial, and Howard does not explain how he was unavoidably prevented from obtaining the information contained in their affidavits within the 120-day deadline for a motion for new trial. Thus, we find no abuse of discretion in the trial court's conclusion that Howard was not unavoidably prevented from discovering the Allen and Minturn affidavits.

## B. The Netcare Records

{¶ 54} The trial court also concluded Howard did not demonstrate he was unavoidably prevented from discovering the Netcare records. As Howard concedes, the Netcare records existed at the time of trial. Howard argues, however, that he was unavoidably prevented from discovering those records due to the ineffectiveness of his trial counsel.

{¶ 55} In our resolution of Howard's second assignment of error, we determined Howard was unavoidably prevented from discovering the Netcare records at the time of trial due to his trial counsel's ineffectiveness. As the state notes, the "unavoidably prevented" requirement in Crim.R. 33(B) mirrors the "unavoidably prevented" requirement in R.C. 2953.23(A)(1). Thus, having already concluded Howard was unavoidably prevented from discovering the Netcare records within the 180-day deadline to file a petition for postconviction relief, we similarly conclude Howard was unavoidably

prevented from discovering the Netcare records within the 120-day deadline for a motion for new trial. Again, we note the state's argument that a defendant cannot blame his counsel's ineffectiveness for his failure to discover the evidence after the trial, and we clarify that this is one of those rare instances where counsel's failure to adequately investigate explains Howard's failure to discover the evidence within the 12o-day post-trial deadline. Thus, we conclude the trial court abused its discretion in determining Howard was not unavoidably prevented from discovering this evidence within the Crim.R. 33 time frame.

## C. Detective Barnett's Contact Information

{¶ 56} Howard frames his recent discovery of Detective Barnett's contact information as evidence he did not obtain at trial due to alleged misconduct of the state in withholding it. The trial court concluded Howard was not unavoidably prevented from discovering Detective Barnett's address because he did not explain why he could not have obtained this information during trial. Again, as we explained in our resolution of Howard's second assignment of error, the ineffectiveness of Howard's trial counsel explains both Howard's failure to obtain this information during trial and Howard's unavoidable prevention in obtaining this information until his new counsel with the Wrongful Conviction Project uncovered it. Thus, the trial court abused its discretion in determining Howard was not unavoidably prevented from discovering this evidence within the Crim.R. 33 time frame.

## D. The Supplemental Medical Certification and the Gorniak Report

{¶ 57} The trial court concluded that Howard did not show, by clear and convincing evidence, that he was unavoidably prevented from discovering the supplemental medical certification and the accompanying Gorniak report within the 120-day time frame. We disagree. Howard could not control when a third party, here, the Franklin County Coroner, would agree to review the circumstances of Delilah's death, nor could Howard control how long Dr. Gorniak would take to reach her conclusions, issue a supplemental medical certification, and write an accompanying report explaining her findings. Simply put, neither the supplemental medical certification nor the Gorniak report existed until well after the 120-day deadline for a motion for new trial expired, and

we will not fault Howard for being unable to force Dr. Gorniak to issue her findings any earlier.

{¶ 58} The state argues the Gorniak report is merely cumulative to Howard's evidence presented at trial and thus does not support a new trial under Crim.R. 33(A)(6), relying on this court's decision in *State v. Hoover-Moore*, 10th Dist. No. 14AP-1049, 2015-Ohio-4863. Initially, we note the supplemental medical certification and the Gorniak report are two separate pieces of evidence, each entitled to a separate analysis as to whether they qualify as new evidence within the meaning of Crim.R. 33. Additionally, in *Hoover-Moore*, the trial court considered the merits of the motion for new trial rather than considering the standard of unavoidable prevention in order to obtain leave to file a motion for new trial. Here, we consider only whether the trial court abused its discretion in denying Howard's motion for leave to file a motion for new trial. If the state chooses to argue that the Gorniak report is merely cumulative to other evidence at trial, the appropriate time and place to do so is at a hearing on remand after Howard is given the opportunity to file his motion for new trial. Because we consider only whether the trial court abused its discretion in denying Howard's amended motion for leave to file a motion for new trial, we find the state's reliance on *Hoover-Moore* inapposite. Accordingly, we conclude the trial court abused its discretion in concluding Howard was not unavoidably prevented from discovering the supplemental medical certification and the Gorniak report.

### E.  Reasonable Time

{¶ 59} Having concluded the trial court abused its discretion in concluding Howard was not unavoidably prevented from discovering the Netcare records, Detective Barnett's address, the supplemental medical certification, and the Gorniak report, we must still determine whether the trial court abused its discretion in determining Howard did not file his motion for leave to file a motion for new trial within a reasonable time after discovering the evidence relied upon.

{¶ 60} We do not agree with the trial court that the approximately six-month delay between Howard's discovery of the Netcare records and Detective Barnett's address and the time he filed his initial motion for leave to file a motion for new trial amounted to an unreasonable amount of time. Having already concluded Howard was unavoidably

prevented from discovering the Netcare records and the Barnett contact information prior to that time due to his trial counsel's failure to adequately investigate, we find that six months is not an unreasonable amount of time for Howard and his new counsel to more adequately investigate, sort through the new information, review the extensive trial record, and formulate a cohesive argument regarding ineffective assistance of counsel. Further, only six days elapsed from Howard obtaining the supplemental medical certification to when Howard filed his amended motion for leave to file a motion for new trial. This can hardly be characterized as a delay at all. Given the specific facts and procedural posture of this case, the trial court abused its discretion in concluding Howard did not file his motion for leave to file a motion for new trial within a reasonable time after discovering the new evidence.

{¶ 61} In sum, we agree with the trial court that Howard does not establish he was unavoidably prevented from discovering the Allen and Minturn affidavits within the 120-day time frame. However, we conclude the trial court abused its discretion when it determined Howard did not demonstrate he was unavoidably prevented from discovering the Netcare records, Detective Barnett's contact information, the supplemental medical certification, and the Gorniak report within the 120-day deadline. We further conclude the trial court abused its discretion in determining Howard did not file his motion for leave to file a motion for new trial within a reasonable time after discovering the new evidence. For these reasons, we overrule in part and sustain in part Howard's first assignment of error. We reverse the decision and entry of the trial court with respect to the denial of leave to file a motion for new trial and remand with instructions to grant Howard's motion for leave to file a motion for new trial on the basis of the newly discovered evidence of (1) the Netcare records, (2) Detective Barnett's contact information, (3) the supplemental medical certification, and (4) the Gorniak report. After Howard is granted leave to file a motion for new trial on these grounds, it is for the trial court to determine in the first instance whether Howard's motion for new trial warrants a hearing and whether Howard demonstrates sufficient new evidence to obtain a new trial.

## V. Third Assignment of Error – Failure to Hold Hearing

{¶ 62} In his third and final assignment of error, Howard argues the trial court abused its discretion when it failed to hold a hearing on his motion for leave to file a

motion for new trial. Our resolution of Howard's first assignment of error that the trial court abused its discretion in denying Howard's amended motion for leave to file a motion for new trial renders Howard's third assignment of error moot and we decline to address it. On remand, after Howard is given leave to file his motion for new trial, the trial court may grant a hearing on the actual motion for new trial.

## VI. Disposition

{¶ 63} Based on the foregoing reasons, the trial court did not abuse its discretion in denying Howard's motion for leave to file a motion for new trial based on the Allen and Minturn affidavits, and the trial court did not abuse its discretion in denying Howard's amended petition for postconviction relief based on the supplemental medical certification and the Gorniak report. However, the trial court abused its discretion in denying Howard's motion for leave to file a motion for new trial with respect to the Netcare records, the Detective Barnett contact information, the supplemental medical certification, and the Gorniak report, and the trial court abused its discretion in denying Howard's petition for postconviction relief without a hearing with respect to Howard's claim of ineffective assistance of counsel. Having overruled in part and sustained in part Howard's first and second assignments of error, rendering moot Howard's third assignment of error, we affirm in part and reverse in part the decision and entry of the Franklin County Court of Common Pleas, and we remand the matter with instructions to grant Howard leave to file a motion for new trial, to grant in part and deny in part the state's motion to dismiss the amended petition for postconviction relief, and to conduct a hearing on Howard's petition for postconviction relief consistent with this decision.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

TYACK and HORTON, JJ., concur.